Okay, our third case this morning, we will take a break after this one is 19-2191 Dale v. Equine Sports Medicine and for the appellant is Mr. Dunn. You may proceed. Good morning. May it please the court. I am Blair Dunn. I'm here on behalf of the appellants in this matter. I'd like to start by first acknowledging that really when you think about New Mexico policy on this case, I think what happened is we had the judge look at the policy and think about ways to limit it and I think he did so mainly in reliance, and he does reference this in his opinion, on the conduct of myself and my partner in the Texas case after the mistrial. And that seems to have really given the judge some severe problems in this case. And I think that in doing so and in focusing on that, he missed what was clearly the established law in New Mexico when it comes to looking at our 37-1-14 statute, which is that it should be construed liberally and broadly and instead he wanted to narrow it. Of course, there's also precedent that he didn't look at, which was the foster case that we've cited to in our brief. And in that case, of course, Judge Vanze from the New Mexico Court of Appeals stated very clearly the policy for New Mexico courts, which is to construe that as broadly as possible in order to allow to get to a case on the merits and a judgment on the merits. Have you been the counsel on this case throughout or are you just appointed to make the argument or at what point did you switch? Give us some background about your presence in the case. Your Honor, I was one of the initiating attorneys along with my law partner at the time. I do joke and tell people that I'm going to write a short novel on this case when it's finally said and done about what a horror story it has kind of been procedurally and the quagmire and the twists and turns of this as it were. Well, let's talk about your horror story. You filed this lawsuit in Texas, correct? That's correct, Your Honor. And then you filed a motion to change the venue to New Mexico when you could have filed it in New Mexico in the first place. That's correct, Your Honor. And then once you got it before the court in Texas and got a ruling against you, then you took it to the Fifth Circuit, correct? Correct, Your Honor. And then after it was in the Fifth Circuit, the Fifth Circuit did what? The Fifth Circuit reversed Judge McBride on the basis of his denial of the motion to dismiss and the reconsideration of the motion to dismiss. And then what did you do? Then we turned around and approximately a month later filed the case here in New Mexico. The Texas case had already ended? So the Fifth Circuit mandated a dismissal without prejudice from Judge McBride. And he did adhere to that and dismiss the case without prejudice at that point. And it was following that dismissal of the Texas case that we initiated the New Mexico case. And then what happened? I mean, you were here once. Why didn't you come back rather than spin your wheels in the Fifth Circuit? Well, Your Honor, we were. This is a procedural quagmire and it is a background. We filed the case. My plaintiffs were located in Missouri and in California. And at the time of the filing, we understood that all of the defendants were in the North District of, I'm sorry, the North District of Texas. They were all located there. They were all practicing, the veterinarians were all practicing there. We thought that it made sense to avoid even arguing about a motion for non-convenient form or whatever it might be that we just go ahead and file in Texas upon a adequate forum to litigate the case. We since decided that it didn't really work there, that it certainly didn't appear. And we did. And there's been a lot of discussion about forum shopping that went back and forth that was discussed in front of the Fifth. And that is certainly something that's there. But even if we had filed and if the judge had allowed us to dismiss the case at the time, this is the decision that was reversed by the Fifth. We could have then turned around and filed it back in New Mexico and suffered no, neither side suffered any amount of real legitimate prejudice. We weren't allowed to do so. We proceeded to litigate the case as best we could, given the limitations on the case. And that's a whole other issue that's really not before the court. We got to the Fifth Circuit. The Fifth Circuit agreed that it was an erroneous decision by Judge McBride and the abuse of his discretion not to have granted our dismissal. And they dismissed our case for us. And they demanded that it be dismissed without prejudice, which we did, which then opened it up for us to file. Now, the New Mexico at that point, isn't that more akin to a failure to prosecute for purposes of the savings statute? Well, this the savings statute discusses negligent prosecution. And and that goes to the point that we don't really try at prosecuting. It doesn't go to an incorrect prosecution. I think negligence implies that you're not paying attention, not you're not pursuing it. We did very adamantly pursue this case, we've been all the way through the fifth got it reversed. We've been very diligent, which I would say is the, the opposite of negligent, we've been very diligent in prosecuting this case. So it failed, but it didn't fail for a negligent reason. It failed for a variety of reasons, none of which were that we weren't diligent in pursuing the case. And there's a lot of discussion about what the word fail means in the briefing from an ultimately what the district court or the district court went awry. If they if you're going to construe the New Mexico statute, I think I think you skipped a step. Talking about going awry, you actually went to trial in Texas, didn't you? We did, Your Honor, and it and and it was mistrialed on an on a point that we also felt was there, but wasn't ever addressed by the Fifth Circuit. If it's it really wasn't necessary for the Fifth Circuit to even look at that, because they were looking at his earlier, Judge McBride's earlier denial of the motion to dismiss and the motion for reconsideration after we agreed to pay the fees that were the condition proceeding to the dismissal that he had said we needed to meet. Well, I thought he or he entered an order that you could have a change of venue if you agreed to pay the fees and attorney fees and you had declined to do so and proceeded to trial. Am I wrong on that? That's not correct. All right, well, correct me. He denied our motion to change venue. We filed a motion to dismiss under Rule 41. He denied the motion to dismiss and stated that we had failed to agree to pay all of the attorney's fees to the other side. We filed a motion to reconsider of that decision. Just a second. You just told me that you did agree to pay the costs and attorney fees to the other side. Now you're saying the district court there in Texas found that you had not done so, which is correct. Your Honor, I was about to explain that. We never said we wouldn't pay the attorney's fees. He dismissed it in spite of the fact we had never said that. So we filed a motion reconsider saying, fine, we'll pay all of the attorney's fees. And he denied that motion as well. And that's what the district or the Fifth Circuit looked at in this case. And they said, OK, well, in the first instance, the dismissal may have been inappropriate, but even assuming arguendo that it was appropriate and it wasn't abuse of discretion to deny the dismissal, when we came back the second time and said, no, no, that's fine. We'll pay the fees. He should have granted that motion to reconsider then, too. They found that both of those decisions by him were an abuse of discretion and then kicked the case. And that's how we ended up here. So once that's happened and we've done everything, we've diligently pursued this, this ends up back in front of Judge Johnson. And Judge Johnson, instead of broadly conveying the statute, looks at it and finds a way to... Let me ask you this question. What is the issue before us? It's whether the district is, is it that your claim is that the district court abused its discretion in denying you an equitable tolling of the statute of limitations? Is that your argument? No, our argument is twofold, Your Honor. The first is that the district court misapplied the tolling statute in New York for any reason, except negligent prosecution, that there's a six-month tolling statute. All right. So you're not relying on the good faith and equity of the court below, and you're not asserting to us that that there is a denial of equitable relief. We are asserting that there's a denial of equitable relief. That's the second part of our argument. Hold on, hold on, not so quick, because I feel like I'm getting flim flammed here. And maybe it's me, not you. But if we, if you are asserting that the district court below denied you the equitable relief of tolling, is it your assertion? What is our standard of review of that matter? Abuse of discretion? No, Your Honor, these are both matters of law. What's our standard of review? They're both de novo. They're both matters of law. We don't deny the denial. We don't review the denial of equitable relief by a trial court de novo and assert our opinion in place of that of the district court, do we? Is that the law? Give me the case. In the instance of a... as a matter of de novo. What's the case? Your Honor, as we cited for statute of limitations... Don't tell me whether you cited it or not, just tell me what it is. Makes me feel bad if you cited it and I didn't catch it. Tiberia versus Cigna Corp. Your Honor, Tiberia versus Cigna Corp. All right. And it holds what? That the Federal Court of Appeals for the 10th Circuit reviews summary judgment on statute of limitation grounds de novo. Wait, all right. So you're talking here about the denial of summary judgment based on a request that the court apply equitable tolling. Is that what you're saying? Your Honor, the procedural posture of the case is here. Your Honor, the district court dismissed the case on the statute of limitations. It did so in denying our claim in our briefing that we whether we were entitled to the equitable tolling statute or we were or to the tolling statute or we were denied the equity of the court under equitable tolling principles that the statute of limitations should have been told. He didn't buy either of those and denied us both avenues of relief. Did you raise equitable tolling in district court? We did raise the equitable tolling in district court. Yes, sir. We raised both the statute and the equitable tolling cases and we pointed out that the 5th Circuit itself had mentioned when they were discussing the case at argument that if something went awry here and they granted what had gone awry here and they granted our reversal of judgment decision that and I forget the judge's name off the top of my head but said wouldn't it make sense that there is going to be some sort of equitable tolling. So in other words, if one of the three of us in framing a question makes a declarative statement then that could be used in a future case to say that a majority of the 10th Circuit has said X. I mean, help me out with this reliance on one of the 5th Circuit judges hypothesizing argument. Your honor, I just pointed out as persuasive argument from the court itself, a persuasive acknowledgment from the court rather. I don't, it's not binding in any sort of fashion. We've never argued that it is but it should be somewhat, should have been somewhat persuasive to Judge perhaps to this court that one of the other circuits has looked at this and said, well, this likely seems to apply. It's, of course, this court's job to actually apply whether or not, or to see whether or not that actually applies in this instance and that's why we're here today. Okay. Could you address the New Mexico Supreme Court case of King which seems to suggest that a dismissal without prejudice would be the functional equivalent of the case not having been filed. Can you distinguish that for me? I can, your honor, and I do think that the part of the distinguishment centers around and is discussed in the later decision of the foster case that we cited to. I think that there, the distinguishment is as to how this case was dismissed is more akin to a federal court, for instance, dismissing for a lack of subject matter which is what's discussed in our cited portion of the foster case, whereas a dismissal for some other type of reason, we didn't just withdraw the case. We actually asked for a motion and attempted to go through Rule 41. That would still, I think, in this instance invoke that six-month statute of limitations, a tolling, sorry. Mr. Dunn, can I ask you a question just factually because I was a little confused about it? Is the case number 16CV953KBMKK, was that a third lawsuit? Your honor, so in the midst of trying to sort out whether or not Judge McBride was going to allow us to leave Texas and or to dismiss our case, we did file a placeholder case in New Mexico. That case never went anywhere. It was never served. It just sat as a placeholder believing that we were, since we had filed it for a dismissal and then we had agreed to pay the attorney's fees on the reconsideration, that we were going to be allowed to proceed with the case in New Mexico. I have a follow-up question, but I don't want to eat up your rebuttal time. If I ask a question without eating up his rebuttal time? If you have a question, ask it. So, well, the action was commenced, correct? I mean, Rule 3 in the Federal Rules of Civil Procedure says that the filing of a complaint commences the action, correct? That's correct, your honor. And so this suit that we're quarreling about in New Mexico was actually the third suit, correct? The third suit that had been commenced. Yes, your honor. And New Mexico Statute 37-114 that we're talking about says if after the commencement of an action the plaintiff fails therein for any cause except negligence prosecution, so you're arguing that that's predicated, that that's satisfied, and a new suit be commenced within six months thereafter, the second suit shall for the purposes here and contemplated be deemed a continuation of the first. The statute only contemplates the second action would trigger the saving statute, right? And that's in fact what every case that I have found in Oklahoma, New Mexico, everywhere, Iowa, all of them uniformly say based on, and I think the clarity of the statute is, you only get to do the saving statute one time. You can't do it on the third suit. So why shouldn't we affirm on alternative grounds even though this has not been raised? Well, your honor, the third case, the second case that was filed in New Mexico preceding, of course, the dismissal from the Texas case, we weren't in any position where we could prosecute that action in two jurisdictions. It really couldn't have proceeded. It's not really a case. Even though it was commenced, we had already had an action open in Texas. We filed that to preserve any potential arguments potentially. Yeah, no, I understand that. So, and if that's true, your honor, if we're going to apply that statute, we're going to say that doesn't apply to a third filing. The bottom line is, is that we were still barred by extraordinary circumstances and that's where equitable tolling we're arguing kicks in. Is that if that is true and the statute doesn't apply, we couldn't have proceeded with any of these actions until we were finally released from Texas by the fifth circuit reversal of judgment bride's order. And that's a period of about 700 days if you look at what equitable tolling applies to give us to file the new case when we're finally released from the state of Texas. Okay, counsel, I think your time's expired. Let's hear from Mr. Newman. Thank you, your honor and may it please the court and counsel. And I just want to, I guess, go to that point that was made last first, that under equitable tolling requires a showing of some extraordinary circumstances standing in the way of filing the action. And in this case, as the court observed, there was an action filed in the district of New Mexico in that intervening time in which the appellants are now arguing that there was some extraordinary circumstance that prevented them from filing. So clearly, there was nothing that prevented them from filing a lawsuit in the district of New Mexico if that's where they wanted to be. And, and, you know, I understand that you can't have two pending at the same time. And they went through the Fifth Circuit. It turns out the the Fifth Circuit opinion came down days after the statute limitations would have expired here. If you're concerned about your statute limitations, and in calling that second lawsuit that was filed a placeholder action, I gather means that we filed it in order to protect our, our statute limitations. You file that you file it again, you know, before before the statute ultimately runs on September 2, 2018. And that wasn't done. So I think there, there is no argument for equitable tolling and adding into the point about the standard of review, because this is a summary judgment on appeal that it is true that it's a de novo review of the ruling on summary judgment, I think it's probably accurate that the and I apologize, just that we didn't brief it this way. But I think it's probably accurate, as the court surmised that when there's a request for equitable relief, which equitable tolling clearly is that the that there is some deference and some use of discretion as to the finding of fact as to whether the the factual showings needed for equitable tolling had been made and, and the district court found that they had not. And that leaves the statutory tolling. And the, the statute is brief, but as I think the court noted, if you look around all of the similar statutes around the country that they tend to deal with failure for for one of jurisdiction. And as I guess the foster case probably deals with that, the tolling applies where that failure was not the fault of the plaintiff, or at least, arguably not the fault wasn't wasn't the result of negligence or intent that, you know, that they believe they had jurisdiction and jurisdiction failed. And then what the what the cases say, and what I understand came to say is that, where there has been no failure, where there's a dismissal for whether it's one of prosecution, but a dismissal without prejudice, there's been no failure of the underlying suit, in which case the statute just does not apply. And I think that's the situation we're in here where the statute just does not apply. Granted, there was a a substantial and acrimonious and procedurally convoluted intervening case filed in the northern district of Texas. But the end result of that was that it was dismissed without prejudice. After, you know, a trial that the plaintiffs, if you look at the record, appeared to intend to cause in this trial and then refused to appear for the retrial. That's what led to the judgment and the appeal. The circuit said it should have been granted the smoke dismissal without prejudice should have been granted early on. And that was the end result. And so ultimately, that case was dismissed without prejudice. Because the plaintiffs asked, that's, you know, such a, you know, house of mirrors, why wouldn't that be an exceptional circumstance for purposes of equitable tolling a reversal for an abuse of discretion? I mean, that never happens. Um, it was it was, I guess you could call that case extraordinary. And if you're all familiar with Fifth Circuit jurisprudence, Judge McBride is kind of extraordinary. But be that as it may, the there was nothing that prevented the plaintiffs from filing the action in the district of Mexico. And they did so in the fall of 2017. And dismissed in 2018. Again, without prejudice. And in fact, this, this raises another issue that was never ruled upon by the district court. But there really have been two dismissals one by notice under Rule 41 by the by the plaintiffs. And, you know, hopefully, we don't have to have that ruled upon if we, you know, but they did file the intervening case. So clearly, there wasn't any extraordinary circumstance that prevented the filing of that they did it once they certainly could have done it again before September 2, 2018. Do you think that the saving statute applies based on the statutory reference to the second suit? Is this the second suit or the third suit? This is the third. This is the third and and that was an interesting point that I had not thought of that the way the statute is couched in similar statutes around the country that applies to a second suit. And if it applied at all, then logically would not apply to the third suit. It's my contention doesn't apply at all because the the suit filed in the Northern Texas did not fail. It proceeded, in fact, to a judgment that was reversed and found that it should have been dismissed without prejudice. But that's not a failure. The jurisdiction, it didn't fail for jurisdictional reasons. There wasn't some failure to include necessary parties or something like that. It proceeded to a judgment that was reversed. It was, you know, that that that doesn't trigger the statute, I don't believe. Well, if Judge Timkovich is right and the dismissal court and he's right by virtue ex cathedra, he's right. But assuming he's right, then the first case was dismissal without prejudice. It doesn't count. The second case was dismissal without prejudice. It doesn't count. So this is the first case. Well, and in that in that case, the statute simply run of the statute simply ran. And I think that's the situation we're in. Thank you. And if you're right about that, the saving statute, we go back to that. For it not to apply requires a failure to prosecute. And what you've lined out is pretty aggressive prosecution by the by Dale to no avail. But it's not like they were sitting on their rights in Texas. Yeah, if you if you look at not only King, but the but the other cases under under the tolling statute, it it's that a dismissal for for this without prejudice means that the statute just doesn't apply, that there was that there is no tolling effect there. And, you know, and I think the I think the reasoning is it doesn't have to be that it was negligent. And it doesn't even have to be that for anything other than that, if it was dismissed without prejudice, it it is as if no suit was ever filed. And it puts the parties back to their position ex ante. And in this case, wasn't wasn't dealing with a voluntary dismissal, was it? I'm trying to remember exactly what what, what the what the dismissal and King was about, actually. But I believe you're correct. And but but but it's not so I'm trying to remember, I know, I saw some cases in preparing for this argument that relying on King that just say that a dismissal without prejudice is, you know, doesn't doesn't trigger the statute. And, and I think that that's, that's the in the in the case that was filed in New Mexico. Who were the defendants in this case, or the in the in the so called second case that was filed in New Mexico? Who were that was has since been dismissed? Who was the same defendant? Yeah, I believe was the same defendants. And what is the residence of those same defendants for new for the venue purposes in New Mexico? Yeah, currently, I'm not saying okay, well, second case, at that time, or the defendants and what was their residence? Yeah, it was the same defendants is now which which is equine medicine and, and Dr. Now you now you have me at a loss. I haven't thought of the name of the case in a while. But an individual veterinarian who at the time is Dr. Boyd, I'm sorry, Dr. Boyd and equine sports medicine, and equine sports medicine and all of its veterinarians are based in Texas. And it was more than just Dr. Boyd from equine sports medicine who saw this horse during the summer of 2014. It's primarily Dr. Boyd, but there were some others and they're all based in Texas. Dr. Boyd had a residence in Texas. He also spent a fair amount of time in New Mexico during racing season, various, you know, homes. And, but his residence I suspect that for for venue purposes, I mean, and we certainly made the argument or I wasn't here then, but this firm made the argument in the Texas case, that his residence for venue purposes was in the state of Texas. And that would have still been true. That would have been the position that the defendants took had the second case gone forward. So venue would have been in the state of Texas. Facially, it appears that venue would have been in Texas. Well, venue would have been proper in either state. The issue is convened to the parties, but because all of the actions giving rise to the cause of action took place in New Mexico, and that had all been completed by September 2nd, then the case could have initially been filed in New Mexico. It has always been a mystery to me as to why it was not. And if you want to look for negligent prosecution of the case, that might be it. And frankly, your honors, that's all I have. I'm happy to answer any other questions the court may have, but otherwise I'll, I'll turn it over to counsel. All right, counsel. We appreciate that. I think we understand your arguments, and the case shall be submitted. Counsel's excused. We'll take a 15 minute break. So that would be, uh, reconvene at 10 50. Thank you, Your Honor. Thank you.